# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH GARNER,** | ) | **CASE NO.1:23CV2258** |
| | ) | |
| **Plaintiff** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE CLEVELAND CLINIC** | ) | **OPINION AND ORDER** |
| **FOUNDATION,** | ) | |
| | ) | |
| **Defendant** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant The Cleveland Clinic Foundation's Partial Motion to Dismiss Plaintiff's First Amended Complaint.  (ECF # 17).  For the following reasons, the Court grants Defendant's Motion, in part.

On January 5, 2024, Plaintiff Deborah Garner ("Garner") filed her First Amended Complaint ("FAC") on behalf of herself and all others similarly situated.  According to Garner, she was employed by The Cleveland Clinic Foundation ("CCF") from 2020 to August of 2023 as a patient registrar/patient access specialist.  She brings her class and collective action claims against the CCF for its failure to pay non-exempt employees overtime at the statutory rate of one and one-half times their hourly rate for hours worked over forty hours in a given week in violation of the Fair Labor Standards Act ("FLSA") and Ohio law.

Garner further alleges the putative class members were not paid all wages owed due to

CCF's improper rounding and/or editing of hours worked in CCF's favor.  Finally, Garner alleges CCF failed to keep accurate time keeping records as required by the FLSA and Ohio law. Count One of Garner's FAC alleges a collective action for violation of the FLSA overtime requirements.  Garner brings her FLSA action on behalf of a collective defined as:

> All current and former non-exempt (including but not limited to commission-based, production-based, hourly, and salaried) employees of Defendant in the United States during the period of three years preceding the commencement of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty(40) hours per workweek by virtue of having their time edited and/or rounded.

Counts II, III and IV of Garner's FAC allege state law claims brought on behalf of a class under Fed. R. Civ. P. 23 defined as:

> All current and former non-exempt (including but not limited to commission-based, production-based, hourly, and salaried) employees of Defendant in Ohio during the period of six years preceding the commencement of this action to the present who were not paid for all non-overtime and/or overtime hours worked by virtue of having their time rounded and/or edited.

Count II asserts a claim for unpaid overtime wages in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Revised Code § 4113.03 and § 411.10.  Count III seeks unpaid wages under the Ohio Prompt Pay Act ("OPPA") O.R.C. § 4113.15.  Count IV seeks damages under O.R.C. § 2307.60 for injuries suffered as the result of a criminal act.

## CCF's Motion

CCF moves the Court to dismiss Garner's class action claims arising from the OMFWSA because in July 2022 the Ohio General Assembly amended the OMFWSA.  Now, in order to mirror the FLSA, Ohio requires OMFWSA class claims to be brought collectively as opt-in

actions.  Thus, insofar as Garner's FAC asserts a class action claim under the OMFWSA, it fails

as a matter of law because Plaintiff asserts her OMFWSA as an opt-out class action.

CCF further moves to dismiss Count III of the FAC, contending that the OPPA expressly

prohibits a cause of action for unpaid wages if there is an ongoing dispute over the wages.  As

Garner's FAC expressly alleges the unpaid wages are in dispute, CCF argues Garners's OPPA

claim must be dismissed with prejudice as a matter of law.

According to CCF, the FLSA preempts all claims for damages arising from the same set

of facts as an FLSA claim, therefore, Garner's state law claim at Count IV should be dismissed.

Moreover, Department of Labor regulations expressly allow rounding by employers under certain

conditions.  Only willful violations of the FLSA can result in a fine or imprisonment.  In her

FAC, Garner alleges CCF should have known it had an obligation to pay overtime under relevant

federal and state law, but this allegation is insufficient to support Count IV.  Instead, Garner has

to allege that CCF knew its rounding practices violated the FLSA.  In the absence of such

allegations, CCF contends Count IV of Garner's FAC must be dismissed.

For the same reason as that stated above, CCF argues that Garner is not entitled to the

three year limitation under the FLSA for willful violations because the FAC fails to allege facts

supporting her willful violation allegation.  Finally, CCF argues the Court should dismiss the

class action six-year limitation as it contravenes and exceeds the applicable limitations period.

## LAW AND ANALYSIS

### Fed.R.Civ.P. 12(b)(6) Standard of Review

"In reviewing a motion to dismiss, we construe the complaint in the light most

favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in

favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal* 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## Count II and OMFWSA Opt-In Requirement

Count II of Garner's FAC falls under the caption, "Ohio Class Action Allegations (As to Counts II, III and IV )" and is titled "Ohio Overtime Violations on Behalf of Plaintiff Garner and the State Law Class Members."  The FAC alleges Garner and the putative state law class worked

in excess of the maximum weekly hours permitted under O.R.C. § 4111.03 but were not paid

overtime wages in violation of Ohio law.

According to CCF, Garner's class action claim at Count II of her FAC must be dismissed

as the OMFWSA statute was amended in July of 2022, adding the following provision:

> No employee shall join as a party plaintiff in any civil action that is brought under
> this section by an employee, person acting on behalf of an employee, or person
> acting on behalf of all similarly situated employees unless that employee first
> gives written consent to become such a party plaintiff and that consent is filed
> with the court in which the action is brought.

Ohio Rev. Code § 4111.10(C).

As a result, the Ohio law now mirrors the FLSA in that prospective collective participants

must affirmatively opt-in to the suit rather than be automatically included in a class action upon

certification.

In support of its Motion, CCF cites the Court to a case out of the Southern District of

Ohio, *Hine v. OhioHealth Corp.* 680 F.Supp.3d 861 ( S.D. Ohio, 2023), wherein the court

granted a motion to dismiss the plaintiff's OMFWSA class claim because the class action was

nullified by the opt-in language of O.R.C. § 4111.10(C).  For the same reasons as those cited by

the court in *Hine*, CCF moves to dismiss the class claims in Count II of Garner's FAC.

Garner opposes CCF's Motion, contending that federal courts apply federal procedural

rules and state substantive law when conisdering state law claims under the Court's diversity or

supplemental jurisdiction.  As a result, Garner may bring her OMFWSA claim for unpaid

overtime wages as a class action pursuant to Fed. R. Civ. P. 23.  Garner argues that the opt-in

language of O.R.C. § 4111.10(C) is a state procedural rule trumped by Rule 23.  For the

following reasons, the Court agrees with CCF and dismisses Garner's class claims at Count II of

5

the FAC.

We start with plain language of the OMFWSA itself.  Under the statue, codified at O.R.C. § 4111.10(A), "an employer who pays an employee less than wages to which the employer is entitled...is liable to the employee affected for the full amount of the overtime wage rate."  In July of 2022, the Ohio legislature added the following language at O.R.C. § 4111.10(C), "No employee shall join as a party plaintiff in any civil action that is brought under this section by an employee, person acting on behalf of all similarly situated employees unless that employee first gives written consent to become such a party plaintiff and that consent is filed with the court in which the action is brought."

When considering state law claims on diversity or on the Court's supplemental jurisdiction, "[F]ederal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer,* 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938)). See also *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).  ("A federal court exercising supplemental jurisdiction over state-law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.").   A problem arises when a state substantive law and federal procedural law conflict.  In such cases, courts in the Sixth Circuit use a two-part test to determine which controls.   In the first step, a court must determine "whether the state law conflicts with a valid federal rule of procedure on point." *Hanna,* 380 U.S. at 469–70, 85 S.Ct. 1136.  If such a conflict exists, the Court must determine "whether the federal rule applies under the Rules Enabling Act and relevant constitutional standards as set forth in Justice Stevens's controlling concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co."  Albright v. Christensen,* 24 F.4th 1039, 1044–45 (6th

6

Cir. 2022) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421–25, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010) (Stevens, J., concurring)).

In *Shady Grove,* the Supreme Court held that a New York rule prohibiting class actions in suits seeking penalties or statutory minimum damages was in conflict with the Federal Rules of Civil Procedure.   Justice Scalia wrote the plurality opinion on behalf of a five Justice majority on Parts I (procedural history) and Parts II-A( finding a conflict between Rule 23 and the New York rule).  However, there was no majority on the remaining issues with competing four Justice opinions regarding whether Rule 23 always supercedes state class-action rules in federal courts. The Justice Scalia-led group held that Rule 23 supercedes state class action rules while a Justice Ginsburg-led dissent held there are circumstances where it would not supercede state substantive laws.  Justice Stevens wrote a concurrence in the judgment, which held the federal rules superceded the New York rule,  but agreed with Justice Ginsburg that there are instances where a state's prohibition on class actions is part of the substantive law and remedies and must be applied by federal courts.  The Sixth Circuit has held that Justice Stevens's concurrence is the controlling opinion in this circuit.  See *Whitlock v. FSL Management, LLC.,* 843 F.3d 1084 fn 2 (6th Cir. 2016)(holding that Justice Stevens's opinion in *Shady Grove* technically controls as it "is the narrowest in support of judgment."

The Court must first determine if the federal rule and state law conflict. *Shady Grove,* 559 U.S. at 398–99.  Here, there does not appear to be any dispute that Rule 23 and the OMFWSA conflict.  Garner expressly argues they conflict (ECF #21 pg 6) and CCF's arguments for dismissal are premised on the application of the opt-in provision of the OMFWSA over Rule 23's opt-out requirement.   Moreover, courts within the Sixth Circuit have concluded the same.  See

*Hine*, supra; *Heppard v. Dunham's Athleisure Corp.*, No. 23-CV-10834, 2023 WL 8521392, at (E.D. Mich. Dec. 8, 2023); *Collins v. Greater Cincinnati Behavioral Health Services,* No. 1:23CV 578, 2024 WL 149292 (S.D. Ohio Jan. 12, 2024). This Court agrees the OMFWSA and Rule 23 are in direct conflict.

Under the Rules Enabling Act 28 U.S.C. § 2072 (a) ("REA"), Congress authorized the Supreme Court "to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals." However, the REA further held "such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." *Id*. Where the Rules and the substantive law of a state are in conflict, the Court must consider "the nature of the state law that [would] be[ ] displaced" by the Federal Rule before the Federal Rule can be applied. *Shady Grove,* 559 U.S. at 419.

In *Shady Grove,* the Supreme Court instructed courts that where a conflict exists courts should further consider "whether the state law actually is part of a State's framework of substantive rights or remedies." *Id.* "A federal rule ... cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id*. at 423.

Justice Stevens instructed courts to consider the balance Congress has established where conflicts between federal procedural rules and state laws exists. Justice Stevens asked courts to consider that "[h]ousekeeping rules for federal court will generally apply in diversity cases not withstanding that some federal rules will inevitably differ from state rules." *Id* at 418. But such

rules must be measured against "the degree to which the Rule [federal rule of procedure] makes the character and result of the federal litigation stray from the course it would follow in the state court." *Id.* at 419, citing *Hanna*, 380 U.S. at 473.  Justice Stevens considered "the nature of the state law that is being displaced by a federal rule," but admonished  courts not to consider the "form" of the state rule but instead, consider whether the "state law actually is part of a State's framework of substantive rights or remedies." *Id.*

Here, the OMFWSA incorporates the opt-in requirement into the body of the statute and is not a standalone procedural rule.  This factor militates in favor of finding it substantive and not procedural.  But this factor did not weigh heavily in the *Shady Grove* analysis.  Instead, Justice Stevens instructed courts to consider "whether the state law procedural rule is so intertwined with a state right or remedy that it defines the scope of the state created right.  Id.  It is this factor that has divided district courts across the country.

In *Collins v. Greater Cincinnati Behavioral Health Services,* No. 1:23CV578, 2024 WL 149292, (S.D. Ohio Jan. 12, 2024) the court, in ruling on a Motion to Strike class action allegations based on the OMFWSA opt-in language, held the opt-in language was a substantive part of the OMFWSA such that it controlled over Rule 23.   The court considered the fact that the opt-in language was part of the substantive statute.  In addition, it held that the application of the opt-in requirement only applied in OMFWSA cases and was not broadly applied under Ohio law.  Because of this limited application, the court in *Collins* found that it suggests that O.R.C. § 4111.10(C) is intended to solely impact the rights and remedies available under the OMFWSA's overtime provision.

Moreover, the *Collins* court found the the OMFWSA opt-in language provides a

9

substantive right to plaintiffs that their claim can only be litigated upon their consent to be bound by the lawsuit.  In turn, it confers a substantive right on employers not to be sued in representative actions absent each employee's affirmative consent.

Finally, it held that the legislative history of the OMFWSA opt-in language did not support a finding that it was procedural.   Ultimately, the *Collins* court determined that the opt-in language of the OMFWSA was so intertwined with the state right or remedy that it functions to define the scope of the state-created right.

The *Collins* court relied heavily on a prior Southern District of Ohio case,  *Hine v. Ohiohealth Corp.*, 680 F. Supp. 3d 861, 867–68 (S.D. Ohio 2023).   In *Hine*, the court granted a motion to dismiss by defendant on plaintiff's class action claim for OMFWSA overtime wage violations.  Concerning the opt-in language of the OMFWSA the *Hine* court also found it to be substantive.  The *Hine* court started with an analysis of the OMFWSA's opt-in provision and whether it "actually is part of a State's framework of substantive rights or remedies." *Shady Grove*, 559 U.S. at 419, 130 S.Ct. 1431 (Stevens, J., concurring) (citations omitted).   The *Hine* court ignored whether the language took the form of substance or procedure because "[a] state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, may exist to influence substantive outcomes, and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Id.* at 419–20, 130 S.Ct. 1431 (cleaned up).

The determination can be a difficult one, and it is a high bar to show that a state procedural rule "was really some part of the State's definition of its rights or remedies." *Id.* at 432, 130 S.Ct. 1431.  For example, the fact that a state procedural rule has a "significant effect on

10

the outcome of a case" is not enough. *Id*. at 431–32, 130 S.Ct. 1431 (citation omitted); id. at 432, 130 S.Ct. 1431 ("The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt."). *Hine v. OhioHealth Corp.*, 680 F. Supp. 3d 861, 867–68 (S.D. Ohio 2023).

Ultimately the *Hine* court found the opt-in language was substantive. Admitting it was a "close call" and that it was procedural in form, the court was persuaded by its determination that the opt-in language defined the scope of the rights available. Its location within the body of the statute and limited application to civil actions brought under the OMFWSA militated in favor of finding it substantive, both of which differentiated it from the New York rule at issue in *Shady Grove*. Finally, the *Hine* court concluded that the opt-in language conferred a right on employees to "not have their substantive rights litigated and released without their affirmative consent," whereas application of Rule 23 would abridge such right. The *Hine* court acknowledged that it is a "high bar" for finding a federal procedural rule violates the REA but found its conclusion was logical because neither an FLSA overtime claim nor an OMFWSA overtime claim brought in Ohio could be maintained as a class action under the plain language of both statutes. However, if the court were to permit Rule 23 to govern an OMFWSA claim brought on diversity or as a supplemental claim in federal court, it would permit a plaintiff to circumvent the plain language of both statutes by bringing an overtime claim under the OMFWSA in federal court. This incongruity further persuaded the *Hine* court the opt-in language was substantive.

In contrast, Garner points out that other courts have concluded that the opt-in language was procedural and that Rule 23 governed. In *Heppard v. Dunham'sAthleisure Corp*, No 23CV10834, 2023 WL 8521392 (E.D. Mi. Dec. 8, 2023) the court considered the OMFWSA opt-

in language on a motion for judgment on the pleadings.  In reaching its conclusion that the opt-in language was procedural the court first noted that finding a procedural rule violates the REA was a difficult hurdle to overcome.  "First, the *Shady Grove* concurrence states that "the bar for finding an Enabling Act problem is a high one."  *Heppard* at *3 quoting *Shady Grove*,. at 432, 130 S.Ct. 1431.  The *Heppard* court noted that the Sixth Circuit takes a strict approach in REA conflict cases noting that  "the Supreme Court has rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Albright v.  Christensen*, 24 F.4th 1039, 1048 (6th Cir.  2022) (quoting *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019)).

The *Heppard* court then considered whether the OMFWSA opt-in language had any bearing on substantive rights.

> Second, the OMFWSA's opt-in requirement does not "define the scope of a substantive right or remedy." *Shady Grove,* 559 U.S. at 428, 130 S.Ct. 1431. The Court's analysis of the state law cannot be based on whether it impacts litigation outcomes, as "almost any rule can be said to have substantive effects." Id. at 431–32, 130 S.Ct. 1431 (quotation marks omitted). Instead, the Court must determine if the state law "defines the dimensions of a claim itself." Id. at 433–34, 130 S.Ct. 1431 (quoting id. at 447, 130 S.Ct. 1431 (Ginsberg, J., dissenting)). The OMFWSA provides that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek." § 4111.03(A). At the core of this state law is the right to overtime pay, and the ability to obtain a monetary remedy if overtime wages are not paid. How other claimants are included in the suit—whether it is opt-in or opt-out—is the mechanism through which the right is enforced. See *Glennon v. Anheuser-Busch, Inc.,* No. 4:21CV141, 2022 WL 18937383, at *5 (E.D. Va. Sept. 22, 2022) ("[M]embers of the putative class here are entitled to sue individually or jointly for unpaid wages and overtime under the Virginia statutes."). A requirement that individuals must opt-in or opt-out of the suit does not affect any individual's right to litigate the case on their own nor alter any of the elements of the OMFWSA claim. §§ 4111.03–4111.031 (detailing elements of an OMFWSA overtime suit, including activities for which overtime not required). Further, it does not change the scope of the remedy: "overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek." § 4111.03(A). An opt-in requirement

merely provides the method through which potential claimants can be bound by the outcome of a suit, and does not impact that individual's rights or remedies under the OMFWSA. Thus, the OMFWSA's requirement that individuals must opt-in to the action is a matter of procedure.

*Heppard,* 2023 WL 8521392, at *3.

The *Heppard* court's holding that the opt-in language of the OMFWSA was procedural was consistent with the Supreme Court's analysis in *Shady Grove*. The New York state law at issue in *Shady Grove*, N.Y. C.P.L.R. § 901(b), barred class actions in "suits seeking penalties or statutory minimum damages" unless the statute specifically authorized class actions. *Shady Grove*, 559 U.S. at 396, 130 S.Ct. 1431. The *Heppard* court held:

A complete bar on class certification has clear implications on a plaintiff's remedies; as described in the Shady Grove dissent, the New York law "command[s] that a particular remedy be available when a party sues in a representative capacity." Id. at 446–47, 130 S.Ct. 1431. In contrast, the OMFWSA's opt-in requirement does not change the scope of the remedy, but merely dictates "a change in the process class members must follow in order to join the suit." (Citation omitted).

*Heppard,* 2023 WL 8521392, at *4.

In departing from the holdings in *Hine* and *Collins*, the *Heppard* court held that despite the possibility of forum-shopping to avoid the opt-in requirements in both the FLSA and OMFWSA, this does not result in a conclusion that the OMFWSA opt-in language is substantive as it "does not enlarge or shrink the substantive rights or remedies available to plaintiffs" but only potentially affects who brings the claims. Id at *5. Also, the *Heppard* court held that whether the opt-in language impacts litigation outcomes does not render it substantive or procedural as any "rule" can have a substantive effect. Instead, *Shady Grove* requires a court to

13

look to whether the state law "defines the dimensions of the claim itself." *Shady Grove* 433-34.
Because the opt-in language does not displace Ohio's definition of its own rights and remedies,
the OMFWSA opt-in language is procedural and Rule 23 applies.

This is undoubtedly a difficult decision with strong arguments on both side as reflected in
the disparate holdings by district courts and the sharp split in the United States Supreme Court.
There is no single decision that provides binding precedent on the matter. However, the Court
finds more convincing the arguments favoring a holding that the opt-in provision is substantive.

First, the undisputed fact that the opt-in language of the OMFWSA is contained within
the statute itself and only applies to claims brought under the OMFWSA militates in favor of
finding it substantive.

Second, a federal litigant is required by the FLSA to affirmatively opt-in to a collective
action for unpaid overtime wages. Likewise a state litigant is required by the OMFWSA to
affirmatively opt-in to a collective action for unpaid overtime wages. However, to allow a
litigant to circumvent both the state and federal statutory requirements would not only be
incongruous but would also constitute a "discrimination." See *Bernhardt v. Polygraphic
Company of America,* 350 U.S. 198 (1956) (holding that a "resultant discrimination" would
result if parties suing on a state court cause of action in federal court were required to arbitrate a
claim that would not be so required if the state cause of action were litigated in state court.)
The Ohio General Assembly, when it added the opt-in language to OMFWSA, stated its intent
"to prohibit opt-out class actions for overtime violations." OH LEGIS 88 (2022), 2022 Ohio
Laws File 88 (Sub. S.B. 47). Given Ohio's intent to mirror the FLSA, the Court holds that to
allow a federal class action for violations of the OMFWSA would, in the words of Judge

14

Stevens in *Shady Grove*, " stray from the course it would follow in the state court," which supports a finding that the opt-in requirement is substantive.

Third, the right of litigants to participate in the litigation at the outset versus joining suit as some point later in the process and the concurrent right of the employer to have an action against it for unpaid overtime wages be brought only on behalf of a plaintiff who affirmatively opts-in are not merely procedural in nature, but contain substantive rights as to how early in the litigation a plaintiff actively  participates and how a defendant defends a suit.  The Sixth Circuit and United States Supreme Court have both held, "the distinction between procedural and substantive rights is notoriously elusive." *Boaz v. FedEx Customer Info. Servs., Inc.,* 725 F.3d 603, 606 (6th Cir. 2013) citing See *Sun Oil Co. v. Wortman,* 486 U.S. 717, 726, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988).  Moreover, the Sixth Circuit, citing the Supreme Court's ruling on *Boaz,* described the FLSA collective action as a "right." "Boaz therefore implies that a plaintiff's right to participate in a collective action cannot normally be waived. The court clearly said that '[a]n employment agreement cannot be utilized to deprive employees of their statutory [FLSA] rights.' *Id*. (alteration in original) (internal quotation marks omitted).  And 'Congress has stated its policy that ADEA plaintiffs [and thus FLSA plaintiffs because the statutory language is identical] should have the opportunity to proceed collectively.'" *Killion v. KeHE Distributors,* LLC, 761 F.3d 574, 590–91 (6th Cir. 2014), quoting *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).  While the Sixth Circuit in *Killion* described the right to collective action in an FLSA actions as "procedural," the fact that it is unwaivable supports a finding that it is so intertwined with the substantive rights under the FLSA that it is more substantive than the right to a jury trial in an FLSA action, which is waivable in an

arbitration agreement.  Thus, the right to bring an action collectively in the OMFWSA would also be so intertwined with the substantive provisions of the OMFWSA that it would tend to favor a finding that it is substantive in nature.

Fourth, the Court is mindful about neutralizing a state statute when there exists a reasonable judicial interpretation which avoids this result when considering the interplay with Federal Rule 23.  Although not controlling, comity, in conjunction with the above arguments is still an important consideration in giving effect to a state's legislative act. Therefore, the Court grants CCF's Motion and dismisses the class action provision of Count II.

**Count III OPPA**

Count III of Garner's FAC alleges a claim for unpaid wages under the Ohio Prompt Pay Act.  CCF moves to dismiss this claim contending that Garner cannot maintain such a claim when there is a dispute over what wages are due.  CCF cites to the Sixth Circuit case of *O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567, 577 (6th Cir.  2009) for the proposition that a dispute over non-payment of wages precludes an OPPA claim.  CCF further cites to this Court's decision in *Baum v. Intertek Testing Servs.  et al.*, No.  1:13CV 1347, 20134 WL 6492372 at *4 (N.D. Ohio Dec.  10, 2013) holding the same.

Garner contends that CCF's argument only applies to paragraph (B) of O.R.C. § 4113.15, while Garner's FAC brings Count III explicitly under § 4113.15(A), which does not contain a limitation based on whether there is a dispute over the unpaid wages claimed by Garner.  Garner further cites to a number of cases which stand for the proposition that the same allegations that support an FLSA overtime wage violation claim will suffice to support an OPPA violation. Because Garner only brings a paragraph (A) claim, she argues the limitations imposed by

16

Paragraph (B) do not apply and CCF's motion must fail.

CCF responds that § 4113.15 cannot be read in the disjunctive and that Paragraph A merely defines the time frame in which an employer must pay its employees, while paragraph B provides the remedy for violation of paragraph A. Therefore, Garner's claim must be dismissed because her FAC acknowledges the claims for unpaid wages are in dispute.

The relevant portions of the OPPA at O.R.C. § 4113.15(A)&(B) read as follows:

(A) Every employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month. If at any time of payment an employee is absent from the employee's regular place of labor and does not receive payment of wages through an authorized representative, such person shall be entitled to said payment at any time thereafter upon demand upon the proper paymaster at the place where such wages are usually paid and where such pay is due. This section does not prohibit the daily or weekly payment of wages. The use of a longer time lapse that is customary to a given trade, profession or occupation, or establishment of a different time lapse by written contract or by operation of law.

(B) Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest, court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.

The Court finds that OPPA does not present separate causes of action in Paragraph A versus Paragraph B but agrees with the court *In Re Lowe's* which held that OPPA Paragraph (A) does not present a separate cause of action, but must be read in conjunction with Paragraph (B). "Section 4113.15(A) defines the time frame in which an employer must pay its employees their

17

wages earned and Section 4113.15(B) describes the liquidated penalty for not paying wages in the time proscribed by the statute." *In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.,* 517 F. Supp. 3d 484, 514 (W.D.N.C. 2021)

Moreover, a review of the caselaw supports CCF's argument that where a dispute over the wages exists, no cause of action will lie. In *Haines & Co. v. Stewart,* No. 2000CA00138, 2001 WL 166465, at *3 (Ohio Ct. App. Feb. 5, 2001), the Ohio Court of Appeals held that plaintiff could not recover unpaid commissions under the OPPA because commissions were not "wages" as defined by the statute. In addition, the appellate court held "[t]he trial court found, and we agree, that this case constituted a contest over a wage claim, and accordingly, R.C. 4113.15, the Prompt Pay Act, does not apply to this case." *Id.* The *Haines* opinion did not limit the application to liquidated damages. This conclusion is echoed in the concurrence in *Haines* wherein the concurring judge wrote, "Nevertheless, I agree there was a contest or dispute of Mr. Steward's wage claim which takes the claim outside the scope of R.C. 4113.15." *Id* at *4.

This Court has similarly held that no § 4113.15 claim survives when the unpaid wage claim is disputed. In *Baum v. Intertek Testing Services,* et al No.1:13CV1347, 2013 WL 6492372, (N.D. Ohio Dec. 10, 2013), this Court, in reliance on *Haines & Co.,* held that § 4113.15 did not apply to plaintiff's claim for commissions because commissions were not encompassed in the OPPA's definition of "wages." The Court continued "even if this Court determines that commissions fall under the definition of "wage" under the statute, the Complaint indicates that a dispute exists between the parties as to their existence.... A legitimate dispute exists as to the amount of the commissions due to Plaintiff, making O.R.C. § 4113.15 inapplicable." *Id* at *4.

Garner points the Court to a number of cases that stand for the proposition that the allegations supporting a claim for an FLSA violation sufficiently state a claim for an OPPA violation.  CCF does not dispute this representation but argues it is merely a proposition of law that does not dictate a finding in Garner's favor because it says nothing about when the OPPA claim for unpaid wages are in dispute.

The Ohio Court of Appeals for the Second District in *Brown v.  Fukuvi USA, Inc.*  No. 29294, 2022 WL 1514910, (Ohio App 2nd Dist May 13, 2022) wrote: "We do note that the better phrasing about disputed claims would be that a party may bring PPA claims even if a dispute over whether the wages in question are owed.  However, recovery including the right to liquidated damages, depends on whether lack of a legitimate dispute exists as to the wages in question." *Id* at *15.  Moreover, in *O'Brien,* 575 F.3d at 578, the Sixth Circuit held that a dispute over unpaid wages precludes recovery for liquidated damages.  The Sixth Circuit stated: "because application of the statute's safe harbor requires that there be a contest, court order, or dispute of a wage claim accounting for non payment, it is proper to focus on whether the asserted dispute accounts for the nonpayment."

Other district courts have also concluded that where there is a dispute over wages there can be no recovery.  See *In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.,* 517 F. Supp. 3d 484, 515 (W.D.N.C. 2021)(" Therefore, regardless of the merits of the parties' positions, it is plainly a bona fide dispute that, in accordance with *O'Brien*, means that Plaintiffs cannot recover liquidated damages or other remedies under section 4113.15(B) of the OPPA.").  See also *Copley, MCGeeny and Tilley  v. Evolution Well Services Operating, LLC,* No. 2:20-CV-1442-CCW, 2021 WL 3370058, at *7 (W.D. Pa. Aug. 3, 2021) (" an OPPA claim

is subject to dismissal where the Complaint facially demonstrates the existence of a dispute accounting for nonpayment."). *Terry v. Pro-Mark Contracting, LLC*, No. 1:14 CV 2542, 2016 WL 3421399, at *6 (N.D. Ohio June 22, 2016).  ("The Prompt Pay Act, O.R.C. § 4113.15, does not apply to disputed wages.").

There is no dispute that the FAC alleges wage claims that are in dispute.  CCF points the Court to the following allegations.  "The FAC alleges that the "success of [Plaintiff's] claims depends upon the resolution of common issues of law and fact, including, inter alia, whether Defendant satisfied the FLSA's requirements for payment of the statutory overtime wages." (FAC at ¶ 73).  Plaintiff further contends that a question of fact and law exists as to whether "Defendant denied Plaintiff and other members of the State Law Class earned and owed compensation . . ." (Id. at ¶ 77).  The Court agrees with CCF that these allegations demonstrate the unpaid wages at issue are in dispute.

Therefore, for the foregoing reasons, the Court grants CCF's Motion and dismisses Count III of Garner's FAC.

## Count IV Criminal Act O.R.C. § 2307.60

According to Garner's FAC at Count IV, she brings a claim on behalf of herself and a class of current or former employees of CCF who were denied overtime wages as required by the FLSA.  Because CCF's failure to pay overtime to Garner and the class was an allegedly willful, this constitutes a criminal act under the FLSA and O.R.C. § 2307.60 allows Garner and the class to recover damages, including punitive damages.

CCF moves to dismiss this claim contending that such a claim is an attempt to circumvent the FLSA's opt-in provision.  Moreover, such a claim is preempted by the FLSA as it

seeks the same alleged unpaid overtime wages as those sought in Garner's FLSA claim.

O.R.C. § 2307.60 (A)(1) reads in pertinent part:

Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

The FLSA at 29 USC § 216 (a) makes it a crime to willfully violate section 215 and reads

in pertinent part:

Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

Relying primarily on the Sixth Circuit holding in *Torres v. Vitale*, 954 F.3d 866, 875 (6th

Cir. 2000), CCF argues that because Congress intended the FLSA enforcement mechanism to be

the exclusive remedy for violations of the FLSA, any attempts to recover under state law for

violations of the FLSA are preempted.

In response, Garner argues that *Torres* is not applicable because it dealt with preclusion

issues between two federal statutes, the FLSA and RICO. Here, the issue is preemption of a state

statute by a federal statute. The Sixth Circuit in *Torres* stated, "the FLSA is the sole vehicle

through which a plaintiff can remedy its own substantive guarantees." *Id.* at 873. The Sixth Court

also stated, however, that "because the text instructs us that the FLSA is the sole remedy only for

federal minimum wage and overtime violations, the FLSA does not preclude suits for other

damages, even when the underlying conduct in those suits also violated the FLSA." *Id*. See also

*Jenkins v. EVO Servs. Grp., LLC,* No. 2:23-CV-01874, 2024 WL 691350, at *4 (S.D. Ohio Feb. 20, 2024). Thus, district courts in Ohio, including *Jenkins and Oglesby,* have rejected the argument that the FLSA preempts claims under ORC § 2307.60. Moreover, "[i]t is well-settled that employees in Ohio can maintain a Rule 23 class relating to their Ohio claims while simultaneously representing a 29 U.S.C. § 216(b) collective action relating to their FLSA claims." *Waters v. Pizza to You, LLC,* No. 3:19-CV-372, 2021 WL 229040, at *5 (S.D. Ohio Jan. 22, 2021) quoting *Ganci v. MBF Inspection Servs., Inc.,* 323 F.R.D. 249, 264 (S.D. Ohio 2017) (Smith, J.).

Here, a plain reading of *Torres* demonstrates that when other damages are sought, claims that also constitute a violation of the FLSA are not barred. *Torres v. Vitale,* 954 F.3d 866, 873 (6th Cir. 2020). In fact, Garner points out she is seeking punitive and exemplary damages in Count IV which are unavailable under the FLSA. Thus, according to *Torres*, her claim would not be barred.

However, CCF responds in its Reply brief that the plain language of O.R.C. § 2307.60 allows that a plaintiff "may recover punitive or exemplary damages if authorized by Section 2315.21 or another section of the Revised Code," but 2315.21 concerns tort claims, while an action under the FLSA, according to CCF, is more closely related to a contract action. But the Court notes this argument was only raised by CCF in it s Reply and Garner did not have the opportunity to respond. As such, it may be revisited at the class certification stage.

Because the Sixth Circuit in *Torres* did not foreclose claims for state law unpaid wage claims, particularly when damages other than those contemplated by the FLSA are permitted, and because at this stage of the proceedings Garner "does not have to demonstrate probability; rather,

'just enough factual information to create an expectation that discovery will uncover evidence supporting the claim,'" *Haber v. Rabin,* No. 1:16CV546, 2016 WL 3217869, at *3 (N.D.Ohio Jun.10, 2016), citing *Twombly,* 550 U.S. at 556, the Court denies CCF's Motion on Count IV of the FAC.

## Willfulness

A] FLSA violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' " *Simpson v. Baskin,* No. 3:17-CV-01077, 2018 WL 1070897, at *10 (M.D. Tenn. Feb. 26, 2018), report and recommendation adopted, No. 3:17-CV-01077, 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018 *Elwell v. Univ. Hosps. Home Care Servs.,* 276 F.3d 832, 842 (6th Cir. 2002).

CCF moves to dismiss the three year limitations period and Count IV because Garner has failed to plead willfulness with the requisite specificity and Garner cannot show a right to recover under § 2307.60 unless she alleges a willful violation of the FLSA that is required to trigger the FLSA's criminal penalties.  However, a plain reading of the FAC shows Garner has more than sufficiently plead willfulness.   For example, the FAC alleges:

> Defendant willfully manipulated both the beginning and end of shift time records of Plaintiff and the members of the FLSA Collective and the State Law Class to reflect less time worked when Defendant submitted these employees' records to payroll, resulting in less time paid than time worked.  FAC ¶ 31.

> Defendant shortchanged Plaintiff Garner and the members of the FLSA Collective and the State Law Class and avoided paying overtime compensation through Defendant's unlawful time rounding and/or editing policy, and time manipulation practices in conformity with this policy. Defendant intentionally, knowingly, and willfully deducted time worked to reduce labor costs notwithstanding that Defendant's editing and/or rounding time manipulation policies violate Department of Labor regulations which require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth

or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).  *Id* ¶ 33.

Moreover, Defendant utilizes a time rounding/editing system that has been rigged in Defendant's favor and is willfully designed to pay less time work than time paid.  *Id* ¶ 34.

Through legal counsel as well as industry experience and custom, Defendant possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal and Ohio law, as recited in this First Amended Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendant therefore knew about the overtime compensation requirements of the FLSA and failed to comply with them or acted in reckless disregard as to its obligations under these laws in failing to comply with them.  Id at45.

Moreover, Defendant's overtime compensation payment, and general wage compensation payment obligations were clearly known by Defendant, but nonetheless willfully and intentionally disregarded.

For example, O.R.C. § 4111.09 provides that "[e]very employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rules issued thereunder, shall keep a summary of the sections, approved by the director of commerce, and copies of any applicable rules issued thereunder, or a summary of the rules, posted in a conspicuous and accessible place in or about the premises wherein any person subject thereto is employed." As approved by the Director of Commerce, this conspicuously-placed posting includes the language: "OVERTIME … [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours in excess of 40 hours in one work week..."

In addition, federal law requires employers subject to the FLSA's wage provisions, such as Defendant, to post, and keep posted, a notice explaining the overtime provisions of the FLSA in a conspicuous place in all of their establishments so as to permit employees to readily read it, which includes the language that the employer must pay "OVERTIME PAY" at "[a]t least 1½ times the regular rate of pay for all hours worked over 40 in a workweek."  (Citation omitted).

Upon information and belief, Defendant posts the notices required to be posted under both Ohio law and the FLSA which each contain language outlining

Defendant's overtime compensation requirements.

By complying with state and federal overtime payment notice posting requirements, but nevertheless by not paying overtime compensation as required by these overtime payment notices, Defendant indisputably knew of the overtime requirements of the FLSA, or acted in reckless disregard for whether Plaintiff and members of the FLSA Collective and State Law Class were entitled to overtime compensation. Despite Defendant's knowledge of the overtime provisions of the FLSA and Ohio law, including by physically posting notices recognizing that Defendant was required to pay overtime compensation for all overtime hours worked, Defendant has, for many years, continued to fail to pay overtime wages for overtime hours worked to Plaintiff and other members of the FLSA Collective and State Law Class. *Id* ¶ 46-50.

According to the FAC, CCF allegedly knew its pay practices violated the FLSA, yet continued to engage in the practice. These allegations sufficiently plead a claim for willfulness and the Court denies CCF's Motion.

**Statute of Limitations**

CCF asks the Court to limit Garner's collective action to a two-year limitation due to her failure to plead a willful violation of the FLSA, but as the Court has found sufficient allegations of willfulness in her FAC, the Court denies CCF's Motion on the FLSA claim.

CCF further moves the Court to enforce a one-year limitation period for Garner's class action claim under O.R.C. § 2307.60. According to CCF, both the Northern and Southern Districts of Ohio impose a one-year statute of limitations for claims arising under § 2307.60.

Garner cites the Court to Ohio caselaw holding that a six-year limitation period applies for claims arising under § 2307.60.

Because § 2307.60 has no express statutory limitation period written into the statute, the Court must look to Ohio's general limitations statutes. O.R.C. § 2305.07 reads "An action upon a liability created by statute other than a forfeiture or penalty shall be brought within six years

after the cause of action accrued."

O.R.C. § 2305.11 reads, "An action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, an action for legal malpractice against an attorney or a law firm or legal professional association, or an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued."

Courts that have considered this issue have overwhelmingly held that § 2307.60 is penal and the one-year limitation applies, including several courts in the Northern and Southern Districts of Ohio. See "[C]laims brought under O.R.C. § 2307.60(A)(1) are subject to a one-year statute of limitations, because the statute " 'contemplates a penalty.' " *Roarty-Nugent v. Cuyahoga Cnty.,* No. 1:20 CV 1025, 2020 WL 5530354, at *6 (N.D. Ohio Sept. 15, 2020) quoting *Marquardt v. Carlton, Case* No. 1:18 CV 333, 2019 WL 1491966, *2, 2019 U.S. Dist. LEXIS 58402, *6-7 (N.D. Ohio Apr. 2, 2019)(citing *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.,* 2017 Ohio 7227, 131, 96 N.E.3d 838 (8th Dist. Ohio Ct. App. 2017); *Gray v. Newman,* 2008 Ohio 1076, 26 (8th Dist. Ohio Ct. App. 2008)); see also *Steinbrick v. Cleveland Elec. Illuminating Co.*, Case No. 66036, 1994 WL 463817, *2, 1994 Ohio App. LEXIS 3756, *5 (8th Dist. Ohio Ct. App. 1994)). *Duffey v. Pope,* No. 2:11-cv-16, 2012 WL 4442753, at *7, 2012 U.S. Dist. LEXIS 137471 (S.D. Ohio Sept. 25, 2012).

More recently, the Northern District of Ohio court in *Brack v. Budish*, 539 F.Supp3d 794

(N.D. Ohio 2021), held that § 2307.60 was penal in nature and applied the one year limitation

period.  In so holding, the court noted that at that time, every court that had considered the

question found in favor of the one year limitation because § 2307.60 allows for punitive damages

and the recovery of attorneys fees.  However, the *Brack* court took a deeper dive into the issue

than most of the courts that had previously held in favor of finding it a penalty statute.

Although the Ohio Supreme Court has not addressed the nature of § 2307.60 directly, in

*Rosette v. Countrywide Home Loans, Inc.,* 105 Ohio St.3d 296 (2005), the Court reversed a

lower court decision which held that a different statute, O.R.C. § 5301.36(C), was a penalty

statute and a one year limitation period applied.  O.R.C. § 5301.36(C) reads  a "mortgagor may

recover, in a civil action, damages of two hundred fifty dollars" for a mortgagee's failure to

record a satisfaction of a mortgage with the appropriate recorders office within ninety days.  In

reversing the trial court, the Ohio Supreme Court found that the statute's wording which

specifically calls for the recovery of "damages" made it a remedial statute and not a penalty.

When interpreting a state statute, the Court must follow state interpretations of the same

and predict how the state's highest court would rule.  See *Brack* at 800, citing *Bevan & Assocs.*

*LPA, Inc. v. Yost,* 929 F.3d 366, 374 (6th Cir. 2019).  The federal courts in *Brack, Marquardt*,

*Duffy* and *Roarty-Nugent*, only had state court decisions that found 2307.60 to be a penalty

statute to rely on.  Consequently, their predictions on how the Ohio Supreme Court would rule

were driven by the unanimity of the state courts in so holding.  These state courts included

*Steinbrick*, *Jones Lang Lasalle Great Lakes Co.,* 2017-Ohio-7727, ¶ 107 and *Ettayem v. H.E.R.,*

*LLC,* 2020-Ohio-4647, ¶ 21.  Unquestionably the overwhelming majority of courts that have

considered this issue have found the statute penal in nature and applied the one year limitation

period.

However, since that time, the appellate court in *Harris v.  Cunix* has come out with the

opposite conclusion relying in part on the *Brack* court analysis.   It further relies on the Ohio

Supreme Court case of *Jacobson v. Kaforey,* 2016-Ohio-8434, ¶ 10, 149 Ohio St. 3d 398, 400,

which held, " R.C. 2307.60(A)(1), by its plain and unambiguous terms, creates a statutory cause

of action for damages resulting from any criminal act."  However, *Jacobsen* answered the

certified question whether § 2307.60 presented a standalone cause of action.  The Ohio Supreme

Court expressly stated its holding in *Jacobsen* was limited to the answer to the certified questions

only and did not consider whether the statute was penal or remedial.

Undoubtedly, § 2307.60 allows for damages, which sounds remedial.  But it also

contemplates punitive damages, which are penal.  When determining whether a statute is

remedial or penal, courts first consider the nature of the remedies offered and then must consider

"whether the primary purpose of the statute is to penalize or to remedy and compensate."

*Cleveland Mobile Radio Sales, Inc.  v.  Verizon Wireless*, 113 Ohio St.3d 394, 398 (2007).

When considering the primary purpose of the statute, courts "must not focus solely on the

statute's ultimate goals or effect," but must also "look to the methods used by the General

Assembly to accomplish the goals and overall purpose of the statutory scheme." *id.*

The Ohio Supreme Court has set forth four factors for courts to consider when

determining whether a statute's primary purpose is remedial or penal: whether the statute is to

penalize or remedy and compensate; whether the statute redresses individual or public wrongs;

whether recovery runs to the individual or to the public and whether the statute was designed to

augment enforcement of the law and to deter violations through penalties rather than simply

compensate victims. *Harris v. Cunix,* 2022-Ohio-839, ¶ 30, 187 N.E.3d 582, 592 citing *Cosgrove* at 288.

The Court's analysis begins with ascertaining the intent of the statute by considering the language of the statute itself, "giving effect to the words used." The Ohio Supreme Court has held that use of the term "damages" without a modifying word before it as indicative of a remedial statutory intent. See *Rosette,* 105 Ohio St.3d at 296. Section 2307.60 authorizes "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law..." This supports finding it remedial as it clearly allows for the recovery of "full damages" for injuries to person or property.

Nor does the inclusion of punitive damages render the statute penal as the Ohio Supreme Court had held, "CertainTeed is mistaken in its claim that the availability of punitive damages will render the statute penal in nature and thus contradict our holding in *Cosgrove*. '[A] law is not penal merely because it imposes an extraordinary liability on a wrongdoer in favor of a person wronged, which is not limited to damages suffered by him.' " *Rice v. CertainTeed Corp.,* 1999-Ohio-361, 84 Ohio St. 3d 417, 421, quoting *Cosgrove*, at 289.

Nor does the statute's intent run to correcting public wrongs, but instead focuses on relief for an individual damaged by the criminal acts of another. Presumably, the public interest and redress of any public wrong would be resolved by the state in a criminal prosecution under the underlying criminal statute. Again, this militates in favor of holding the statute remedial.

Undoubtedly, the overwhelming majority of courts that have considered this issue have held it was penal. But the majority of cases that have so found have either failed to address the above factors entirely, have engaged in minimal analysis, or have felt compelled to predict how

the Ohio Supreme Court would rule based on the fact that at the time they were tasked to predict how the Ohio Supreme Court would rule no Ohio court held it to be remedial.  Having the benefit of the most recent Ohio decision in *Harris*, the Court has new appellate authority  to consider.  As the District Court in *Brack* noted, "Plaintiff's arguments have considerable force, however, and on a blank slate might well carry the day."  *Harris v. Cunix,* 2022-Ohio-839, ¶ 26, 187 N.E.3d 582, 590 quoting *Brack* at 801.   This competing authority gives added weight to the Ohio Supreme Court's statement that "In undertaking the inquiry into whether the statute is remedial or punitive, it is not possible to determine the precise tipping point between payback and punishment." *Cleveland Mobile* at 398.

In conclusion, the Court finds that the arguments in support of the remedial nature of §2307.60 are more persuasive and therefore, Court denies at this time CCF's motion.  However, there has been a paucity of argument or information regarding the intent of the Ohio General Assembly in enacting § 2307.60, which is a key factor in analyzing the nature of the statute.  Also, because this issue goes to definition of the class, the Court may revisit this issue on class certification should some compelling new historical information be presented on the General Assembly's intent. [1]

---

[1] The FAC alleges that CCF's willful failure to compensate for overtime hours worked is the basis for Garner's injury under Count IV.  CCF argues the one year limitation applies while Garner alleges a six year limitation applies, however, Section 2305.11 also provides "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued."  The Court finds this issue may implicate the applicable statute of limitation question and may need further briefing on class certification.

Therefore, for the foregoing reasons, the Court grants CCF's Motion in part and dismisses the class action portion of Count II, dismisses with prejudice Garner's OPPA claim at Count III, denies CCF's Motion to dismiss Count IV, denies CCF's Motion on application of the FLSA's three year limitation for willful violations and denies CCF's Motion on Garner's six year limitation period on Count IV.

IT IS SO ORDERED.


Date: May 29, 2024

/s/ Christopher A.  Boyko
CHRISTOPHER A. BOYKO
United States District Judge