**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEBORAH GARNER,** | ) | **CASE NO.1:23CV2258** |
| | ) | |
| **Plaintiff** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE CLEVELAND CLINIC FOUNDATION,** | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| **Defendant** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff's Motion to Facilitate Court-Authorized Notice to Other Similarly-Situated Potential Plaintiffs. (ECF # 57). For the following reasons, the Court grants the Motion.

On January 5, 2024, Plaintiff Deborah Garner ("Garner") filed her First Amended Complaint ("FAC") on behalf of herself and all others similarly situated. According to Garner, she was employed by The Cleveland Clinic Foundation ("CCF") from 2020 to August of 2023 as a patient registrar/patient access specialist. She brings her class and collective action claims against the CCF for its failure to pay non-exempt employees overtime at the statutory rate of one and one-half times their hourly rate for hours worked over forty hours in a given week in violation of the Fair Labor Standards Act ("FLSA") and Ohio law.

Garner further alleges the putative class members were not paid all wages owed due to CCF's improper rounding and/or editing of hours worked in CCF's favor. Finally, Garner alleges CCF failed to keep accurate timekeeping records as required by the FLSA and Ohio law.

Count One of Garner's FAC alleges a collective action for violation of the FLSA overtime requirements. Count II asserts a claim for unpaid overtime wages in violation of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Revised Code § 4113.03 and § 4111.10. Count III seeks unpaid wages under the Ohio Prompt Pay Act ("OPPA") O.R.C. § 4113.15. Count IV seeks damages under O.R.C. § 2307.60 for injuries suffered as the result of a criminal act.

Plaintiff seeks a collective action defined as:

> All current and former non-exempt (including but not limited to commission-based, production-based, hourly, and salaried) employees of Defendant in the United States during the period of three years preceding the commencement of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty (40) hours per workweek by virtue of having their time edited and/or rounded.

On May 29, 2024, the Court granted, in part, CCF's Motion to Dismiss (Partial) dismissing the class action portion of Count II, dismissing with prejudice Garner's OPPA claim at Count III, denying CCF's Motion to dismiss Count IV, denying CCF's Motion on application of the FLSA's three year limitation for willful violations and denying CCF's Motion on Garner's six year limitation period on Count IV. Later, the Court denied Defendant's Partial Motion for Judgment on the Pleadings on Plaintiff's claims for exemplary and punitive damages.

After Plaintiff's Motion for Court Authorized Notice was filed, Defendant moved to strike the Motion because Plaintiff relied in part on the opinions of an expert it failed to disclose in discovery. In the alternative, Defendant asked for time to decide whether it would depose the expert and then file an opposition brief. Upon Defendant informing the Court it would not retain

a rebuttal expert but would instead file an opposition brief, the Court set a new briefing schedule. The Motion is now ripe for ruling.

**<u>Plaintiffs' Motion</u>**

Plaintiffs move for Court-authorized Notice. According to Plaintiffs, Defendant CCF has engaged in a non-neutral time-rounding practice that results in a failure to compensate non-exempt employees for all hours worked. In practice, according to Plaintiffs, when an employee arrived seven minutes or less before the start of the scheduled shift, Defendant rounded the time to the scheduled start time. If an employee clocked out seven minutes or less after the end of their shift, Defendant rounded the time to the scheduled end of the employee's shift. Plaintiffs allege this practice was uniformly applied across its Cleveland, Florida and Nevada area facilities from at least 2018 until December 1, 2024, when Defendant appears to have ceased this practice.

Plaintiffs offer the deposition testimony of Defendant's Rule 30(b) witness Senior Counsel Amanda Van Horn who testified regarding Defendant's "policies regarding rounding, editing, or modifying hours, starting times, ending times, and time worked." (ECF # 55-1). Her testimony covered Defendant's systemwide attendance, timekeeping, compensation for preparatory and concluding activities and overtime pay policies. Plaintiffs contend these policies are applied to non-physician employees across Defendant's facilities in Ohio, Florida and Nevada. These facilities are encompassed within five target groups which include: Cleveland Clinic United States locations, Cleveland Clinic Akron General Medical Center, Cleveland Clinic Akron General Off Site Locations, Cleveland Clinic Indian River Hospital and Cleveland Clinic Union Hospital Health System. (See ECF # 55 Ex. 2-9 "Attendance Policies," Ex. 11-24 "Timekeeping and Tardy Policies," Ex. 39-43 "Prep and Conclude Policies,' and Ex. 45-51

"Overtime Pay Policies"). All those policies reflect a clear application across CCF's numerous U.S. campuses according to Plaintiffs.

The "Attendance Policy" applies broadly regardless of target group, includes a "no fault" philosophy regarding absences and tardiness and is intended to have a consistent method for monitoring the same in order to apply corrective action when excessive. In addition, the Attendance Policy defined "tardy" as when an employee reports to work after the start of the shift but before the midpoint of the shift. (ECF # 53-1). It contains other universally applied definitions such as "Early Clock In," which is defined as clocking in more than seven minutes prior to the start of a scheduled shift without supervisor approval. (ECF 55-2). "Late Clock Out" mirrors the same and is defined as clocking out more than seven minutes after the conclusion of a scheduled shift without supervisor approval. That these were CCF system-wide policies was confirmed by Van Horn at (ECF #53-1, pg 29:24-30).

The CCF "Timekeeping Policy," which is incorporated into the "Attendance Policy," is also applied throughout the CCF facilities. That policy reads in part: "It is the policy of Cleveland Clinic to ensure that non-exempt employees are compensated for all time worked, and to maintain a work environment that accurately accounts for all time worked and does not encourage, either directly or indirectly, off-the-clock work. Cleveland Clinic uses an automated time and attendance system to record and track productive and non-productive hours for all non-exempt employees." (ECF #55-11). Again, it is applied throughout the CCF facilities in the U.S. (*Id* at pg. ID 2004).

CCF's Compensation for Preparatory and Concluding Activities Policy reads in pertinent part: "prior to performing preparatory activities at the start of a scheduled shift, employees

must clock into work. At the end of a scheduled shift, an employee may not clock out of work until all concluding activities have been performed. No preparatory or concluding activities may be performed unless the employee is clocked into work." (ECF # 55-39 pg.ID 3248). And once again, this applies to all U.S. CCF locations. (ECF # 53-1 pg. 157:5-11, 159: 2-6).

Additionally, the CCF's "Overtime Pay Policy", applied across the CCF's U.S. facilities, defines overtime compensation as "one and one-half times an employee's regular rate for the work week" and computes overtime thru a five step process as outlined at ECF #55-45, 55-46.

Although each of the five target groups has its own written policies, these are captured almost verbatim or are virtually similar in all relevant aspects. These policies are issued top down and are evidenced by both Plaintiff and Senior Counsel for CCF. Moreover, CCF policy unequivocally requires employees be paid "for all time worked, including time spent at the start or end of their scheduled shift on all activities that are closely related and indispensable to their principal work activities." (ECF # 55-39).

Plaintiffs cite to the deposition testimony of Lisa Speckman, CCF Finance Manager, who testified as a Rule 30(b)(6) witness for CCF. She acknowledged that prior to December 1, 2024, the CCF practice was to round to the quarter hour. (ECF 53-3 pg. 32). She further confirmed that if an employee clocked in seven minutes early or less that time was rounded to the start of the shift. Also, the same rounding applied to employees who logged out seven minutes or less after their shift ended. (*Id.* at pgs 32-33). She testified this policy applied across the CCF system for all employees subject to rounding whether in Cleveland, Florida or "somewhere else." (*Id*. at 33).

The same policies extend to CCF's Union employees with the exception of one group

who are members of the Ohio Nursing Association and are employed at Union Hospital and are paid by the minute and are thus exempt from the collective definition. Otherwise, the relevant CBA's either mirror the above pay and attendance policies or are silent as to the same, which means those employees are governed by the same policies as the non-union employees. In her deposition, Van Horn confirmed that the applicable attendance and overtime rules apply to the Union employees at Akron General, Indian River, Lutheran and Children's Hospital.

Plaintiffs offer the deposition excerpts of Speckman who testified that timekeeping oversight, including the use of the time rounding policies, are centralized across U.S. CCF sites. (ECF # 53-3 Speckman Tr. 6:13-7:22). Moreover, the time rounding policy is programmed into the CCF's Kronos time keeping system which automatically rounds according to the CCF policy, (*Id*. at 59:18-60) and applies to all CCF facilities in the U.S. (*Id.* at 33:6-16). This automatic and broadly applied policy is affirmed by Heidi Krauss, Payroll Manager for CCF facilities in the U.S., who testified that CCF uses the "Workday" payroll system for all U.S.-based CCF employees. (Krauss tr. 9:16-22). According to Krauss, "time is rounded in Kronos and then the rounded time is given to Workday." (*Id*. 14: 5-18.).

The broad application of CCF's rounding policy is confirmed by the testimony of the individual Plaintiffs. Garner worked as a patient service specialist and PRN patient service specialist from 2020 to 2023. She worked at CCF facilities at Hillcrest Hospital, Main Campus, Marymount, Mentor, Euclid Hospital and Lutheran Hospital. She further worked in several different departments.

Plaintiff Gill worked at CCF from 2013 to 2023 as a medical assistant in the Spine and Neurology departments at CCF Main Campus working under several different supervisors.

Plaintiff Allen-Shoats was a CCF Union employee from 2017 to 2024 as a housekeeper and nursing technician at the Akron campus and in the Heart and Vascular Orthopedics and Neurology Departments. She worked for a number of supervisors.

Plaintiff Parks is a patient service specialist from 2019 to present and works at the CCF Beachwood Family Health Center. She has also worked in a number of departments including Blood Lab, Neuropathy, Radiology, Orthopedics, Primary Care, Pediatrics, Family and Internal Medicine under a number of supervisors.

Plaintiff Pinardo worked from 2008 to 2023 as a patient access representative/patient service representative in Admitting, Radiology and the Emergency Room at Fairview Hospital Moll Center for a number of supervisors.

Finally, Plaintiff Burvick has worked from 2018 to the present as a health unit clerk and patient service specialist at Main Campus, Lyndhurst, Willoughby Hills MOC, Willoughby Hills Family Health Center and Cleveland Clinic Administration building. She has worked in Neurology and Integrative and Lifestyle Medicine for two different supervisors.

Despite Plaintiffs varied positions, departments, facilities, supervisors and union and non-union status, they were all subject to the same rounding policy and all logged their time with the Kronos system. Each testified that their respective work stations were located within a short walk from the time card log in and out location. Moreover, they testified that they would actually begin work within that seven minutes or less for which they were not paid. They further testified that their co-workers would also begin working almost immediately after clocking in and right up to the time they clocked out.

In her deposition, Van Horn concedes that CCF has not conducted any reviews to

determine whether employees were denied compensation under their rounding policy. (ECF 53-1, pg 176: 8-21). Contrast this with Plaintiffs' expert Brian Kriegler, PhD. and Managing Director at Econ One Research, Inc., an economic and statistical consulting firm that has expertise in statistical analysis in wage and hour cases. Kriegler's analysis reveals that for the relevant time period, a review of over 16 million shifts shows a disparity between rounded and unrounded time such that for 59,190 putative collective members approximately 82 percent were disadvantaged due to rounding. This amounted to 381,137.60 overtime compensation hours denied the putative collective members with an average of 16.68 unpaid hours per person and 8.53 average overtime hours per person. While a substantive issue ultimately, this provides further evidence that the CCF's rounding policy fails to compensate employees for actual hours worked.

Plaintiffs allege that *Clark* v. *A & L Homecare & Training Center LLC*., 68 F.4th 1003 (6th Cir. 2023) changed the evidentiary burden needed to establish notice to the class but did not alter the analysis of who is similarly situated. See White concurrence in *Clark*, 68 F.4th at 1020. "Lastly, I remind district courts that today's ruling addresses how much a plaintiff must show to satisfy a district court that other employees exist who, upon further inquiry, will be found to be similarly situated to the plaintiff; it does not address the underlying threshold for FLSA similarity, which remains the same." As such, the Sixth Circuit holding in *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 584 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), still applies that a plaintiff can show the collective is similarly situated if they are subject to the same FLSA-violating policy. 575 F.3d at 584-85 and *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544,

546-47 (6th Cir. 2006). (Plaintiff must show only that "his position is similar, not identical to the position held by the putative class members."). Courts are not to evaluate the underlying merits at the notice stage.

At this stage, Plaintiffs argue they have met their evidentiary burden to show the putative collective members are similarly situated such that Notice should be sent. The evidence is overwhelming that the putative class was subject to the same FLSA-violating policy of rounding. While rounding itself does not violate the FLSA, it does violate the FLSA when the rounding policy over time fails to compensate employees for all hours worked which is the heart of the question in this case.

As a result, Plaintiffs ask the Court to grant their motion and order notice by email and regular mail and posting notice by timeclocks.

**<u>Defendant's Opposition</u>**

In its most recent opposition brief, Defendant contends that the FLSA does not bar rounding to the nearest quarter of an hour. In fact, 29 C.F.R § 785.48(b) expressly permits its use. It only can become unlawful if, over time, the rounding practice fails to compensate employees for all hours actually worked.

Defendant contends Plaintiffs have not met their burden to show a likelihood of success because their own evidence fails to demonstrate that Defendant's pay policies violate the FLSA. Plaintiffs' expert, Dr. Brian Kriegler, in hisDeclaration states that Defendant's employees time punch records compared to their rounded punch records show a difference of 381,137.60 in fewer rounded overtime hours than unrounded overtime hours. (ECF # 57-3, pg. 17). This results in an average 6.44 overtime hours over the course of three years. But Defendant contends this would

only amount to an FLSA violation if the employees are actually working during these rounded hours. The evidence proves they were not. Plaintiff Garner testified she would punch in then wait for an elevator, walk a minute to her work site, put away her personal belongings and then start working. Other employees reported walking five to ten minutes after punching in to get to their worksite. Again, under the FLSA this is not compensable work time. However, even a one minute walk to the worksite, punching in and walking back to the punch clock after work is done amounts to over 8 hours a year per employee, which is more than the 6.44 hours of rounded overtime for each employee estimated by Dr. Kriegler over a three year period. And Dr. Kriegler admits he does not know if the employees were engaged in work for those 6.44 hours. Moreover, the evidence before the Court at this stage of the proceedings shows that employees knew they did not need to start work until their scheduled start time even if they punched in sooner.

Nor have Plaintiffs shown that all eligible employees suffered from the same alleged FLSA-violative overtime policy. In fact, Plaintiffs' expert states that roughly 17 percent of employees who worked overtime either gained overtime or suffered no overtime wage injury due to Defendant's rounding practice.

Also, Defendant alleges that its employees were subject to different time-rounding policies. Some employees were subject to a one minute tardiness policy while others could punch in up to seven minutes after their shift began without being tardy and others had flexible start schedules. Some employees worked at small facilities with the punch clock near their work station or punched in to work on a computer or phone which made the likelihood of starting soon after punching in greater. Other employees worked at larger facilities such as Defendant's Main Campus and had five to ten minute walks from the punch clock to their work stations. Some

employees' punch in and out requirements were governed by collective bargaining agreements which gave them overtime beyond that required by the FLSA. Lastly, the representations of six opt-in plaintiffs whose knowledge of rounding practices extends only as far as their own personal experiences is insufficient to find a collective FLSA-violative policy that applies to over 80,000 employees across a myriad of facilities. In short, all these differences militate against finding the employees are similarly situated.

Plaintiffs' own testimony demonstrates that between them they worked in only nine of the five thousand positions they seek to include in their FLSA putative collective. Only one Plaintiff was subject to a CBA and three of the six were largely involved in the same position; patient care specialist.

Although Plaintiffs would have the Court believe the rounding issue at the heart of this case was universally applied across the CCF landscape, Defendant contends this is not the case. Instead, CCF employed two different rounding practices -"quarter-hour rounding" and "flex" rounding. In fact, some employees were not subject to rounding at all. As testified to by Speckman, the quarter-hour rounding method adjusted each clock in and clock out time to the nearest quarter hour. In "flex" rounding, Defendant's timekeeping system calculates the total elapsed time between an employee's clock-in and clock-out, deducts for a meal break (if taken) then rounded the total duration of time to the nearest quarter hour increment. According to Defendant, an employee was not necessarily subject to just one timekeeping method or another as an employee might be subject to quarter-hour rounding on one shift and then converted to flex rounding when punching out for a meal or when working a second position that was subject to flex rounding.

During the proposed notice period Defendant contends 4.5 percent of non-exempt positions were subject to flex rounding and any employee could be subject to flex rounding on any shift simply by punching out for a meal break. This matters because employees whose time is subject to flex rounding would not be part of the putative collective because their punch times were not rounded to the nearest quarter hour but were instead aggregated and then rounded to the nearest fifteen minute increment. Thus, they would not be subject to the seven minute rule like the quarter hour rounding employees would be.

Additionally, time clocks are placed throughout Defendant's facilities and any employee can clock in and out at any time clock. Thus, depending on where in the facility they clock in or out, there may be a significant distance to walk to get to their actual work station. Because employees are not required to start work until their scheduled start time, employees often put their meals away, place items in lockers and converse with co-workers prior to beginning their scheduled shift. This practice was a main driver in Defendant's rounding practice. (Van Horn ECF #63-1 ¶ 19). Also, other non exempt employees do not use time clocks at all but instead use software on their computers or phones.

Defendant argues that, despite Plaintiffs' assertions to the contrary, there are significant differences in Defendant's tardiness and timekeeping policies. For instance, Van Horn testified that department managers had discretion to establish tardiness rules within their departments. There were three tardiness policies a department manager could apply: 1) a one minute rule, 2) an eight minute rule or 3) a flex policy. (ECF # 53-1 pg. 20:14-21:13). Thus, each department head sets the tardiness policy which the system then flags depending on the policy. An attendance infraction then may be issued.

In short, because Plaintiffs cannot show they were working during the period their time was rounded against them, cannot show they are similarly situated in job duties compared to the potential class and cannot show the class was subject to the same time rounding pay practice, notice should not be sent to the putative collective.

**LAW AND ANALYSIS**

The FLSA "enshrines rights to a minimum wage and overtime pay, 29 U.S.C. §§ 206-07, and empowers workers to enforce these rights through litigation as a collective, *id.* § 216(b)," providing "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

"To the extent practicable ... court-approved notice of the suit should be sent only to employees who are in fact similarly situated." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023). "[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. In 2023, the Sixth Circuit defined the standard courts must apply when determining whether notice should be sent to a prospective collective of similarly situated employees. "Nor, as a practical matter, do we see how a district court can conclusively make "similarly situated" determinations as to employees who are in no way present in the case. Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id.* at 1010. "But neither do we think a district court should facilitate notice upon merely a "modest showing" or under a "lenient standard" of similarity." *Id.*

"We adopt that part of the preliminary-injunction standard here; and we hold that, for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a "strong likelihood" that those employees are similarly situated to the plaintiffs themselves. That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance. The strong-likelihood standard is familiar to the district courts; it would confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated; and it would strike the same balance that courts have long struck in analogous circumstances." *Id.* at 1010-11.

However, the Court notes that in order to award injunctive relief a movant must establish a strong likelihood of success on the merits by clear and convincing evidence. The Sixth Circuit in *Clark* has held though that a lesser standard of proof applies in an FLSA similarly situated analysis. Therefore, the Court will consider the parties' evidence to determine whether Plaintiffs and the putative collective are similarly situated with a showing that is greater than that needed to show a genuine issue of fact but less than a preponderance.

"To determine whether plaintiffs are similarly situated, we consider (1) 'the factual and employment settings of the individual[ ] plaintiffs," (2) 'the different defenses to which the plaintiffs may be subject,' and (3) the degree of fairness and procedural impact of certifying the action as a collective action.'" *Pierce v. Wyndham Vacation Resorts, Inc.,* 922 F.3d 741, 745 (6th Cir. 2019) quoting *O'Brien,* 575 F.3d at 584 (quotation omitted). "The heart of the matter is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence." *Pierce,* at 745 citing 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1807 (3d ed. 2005). "Employees bear the

burden of satisfying this requirement." *Pierce* at 745 citing *O'Brien,* 575 F.3d at 584.

**Strong Likelihood that the proposed collective members are Similarly Situated**

Under *Clark*, the Sixth Circuit has instructed district courts to use the preliminary injunction element of strong likelihood when determining whether employees are similarly situated, but district courts are not to use the preliminary injunction evidentiary standard of clear and convincing evidence. Instead, courts are instructed to apply an evidentiary standard of something less than preponderance but greater than evidence that merely creates a genuine issue of fact. See *S. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.,* 128 F.4th 809, 821 (6th Cir. 2025)( "a preponderance of the evidence is a showing that the fact in contention is more likely than not."). Thus, evidence of a "strong likelihood" that the employees are similarly situated does not need to rise to that of "more likely than not."

Plaintiffs' evidence consists of Declarations of the opt-in Plaintiffs and deposition testimony as well as Dr. Kriegler's opinions on what the pay data reveals. Dr. Kriegler's expert opinion says nothing about whether the collective class is similarly situated in job duties such that they performed the same tasks as the opt-in members.

In their Declarations, the opt-in Plaintiffs were nurses, administrative assistants, patient services specialists, payroll specialists, service center materials management work leaders, cast assistants and medical assistants, LPNs, assistant nurse managers and administrative program coordinators.

Under the FLSA, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Typically, after an individual affirmatively joins an

action by filing a written consent they "enjoy party status as if they had initiated the action." *Canaday v. Anthem Cos., Inc.,* 9 F.4th 392, 394 (6th Cir. 2021). But the Sixth Circuit's more recent decision in *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003 (6th Cir. 2023), calls that somewhat into question. It suggested a further step beyond merely filing a consent to join is required. According to the Sixth Circuit in *Clark,* " 'other employees' become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court determines—not conditionally, but conclusively—that each of them is in fact 'similarly situated' to the original plaintiffs." *Lott v. Recker Consulting, LLC,* 798 F. Supp. 3d 778, 794 (S.D. Ohio 2025), motion to certify appeal granted, No. 1:23-CV-489, 2025 WL 2837419 (S.D. Ohio Oct. 7, 2025), appeal dismissed, No. 25-3836, 2025 WL 4063547 (6th Cir. Nov. 6, 2025) quoting *Clark*, 68 F.4th at 1009.

Defendant is correct that the regulations tied to the FLSA permit the practice of rounding time. 29 CFR § 785.48 reads:

> (a) Differences between clock records and actual hours worked. Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded. Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked.
> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

The rounding policies must be "neutral, both facially and as applied." *Lott v. Recker Consulting, LLC*, 798 F. Supp. 3d 778, 806 (S.D. Ohio 2025), motion to certify appeal granted, No. 1:23-CV-489, 2025 WL 2837419 (S.D. Ohio Oct. 7, 2025), appeal dismissed, No. 25-3836, 2025 WL 4063547 (6th Cir. Nov. 6, 2025) quoting *Houston v. St. Luke's Health Sys.*, 76 F.4th 1145, 1150 (8th Cir. 2023). "The rounding regulation does not require rounding; it permits it. That permission comes with conditions: chiefly, that the rounding "will not result" in systematic or routine underpayment "over a period of time" for work performed. " *Id.* at 1152 quoting 29 C.F.R. § 785.48(b).

In 29 U.S.C. § 254(a), called the Portal-to Portal Act, Congress excepted two activities the Court previously deemed compensable: "walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *IBP, Inc. v. Alvarez* 546 U.S. 21, 27 (2005). " Under the Portal-to-Portal Act then, an employee's principal activities are compensable, while conduct he engages in before and after those activities (i.e., preliminary and postliminary acts) is not." *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig..,* 852 F.3d 601, 609 (6th Cir. 2017). "In other words, an activity is integral and indispensable to the work an employee was hired to do if it is a component of that work, and he cannot complete the work without it." *Id.*

Defendant contends Plaintiffs' Motion must fail because none of the named or opt-in Plaintiffs have shown they were performing compensable work in the time rounded against them. Defendant argues that a review of the Declarations of each of the named and opt-in Plaintiffs fails to indicate any evidence that they were engaged in compensable work at the time frame

within the rounding before and after their shifts.

Plaintiffs concede that Dr. Kriegler did not opine on whether the rounding analysis he performed was based on actual hours worked. However, Plaintiffs point to their own deposition testimony demonstrating they were working during the time rounded under Defendant's policies. Moreover, they contend that issue is a merits issue more appropriately addressed on summary judgment and is not a proper consideration at the notice stage. Plaintiffs allege that Defendant has conceded its time records are not accurate. As a result, Plaintiffs contend that "where an employer's records are inaccurate or incomplete, plaintiff need only produce evidence to show the amount and extent of work 'as a matter of just and reasonable inference.'" *Acosta v. Min & Kim, Inc.,* 919 F.3d 361, 365 (6th Cir. 2019) (citing *Tyson Foods,* 136 S. Ct. at 1047). Given the rounding policy applied broadly in the CCF, Defendant's 30(b) representative admitted Defendant has no idea when its employees actually start working. As a result, Defendant has not met its statutory obligation to record "daily starting and stopping" times under the FLSA. 29 U.S.C. § 211(c), 29 C.F.R. § 516.6(a)(1). Thus, Plaintiffs' evidentiary burden is only that which allows a reasonable inference to be drawn. Consequently, Defendant cannot use its own poor record keeping as an offensive tool against the potential collective to show how many hours they actually worked.

For court-facilitated notice to be approved, Plaintiffs' burden is merely to "show only that his position is similar, not identical to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank,* 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011); *Comer*, 454 F.3d at 546–47 (internal quotation marks and citation omitted). Judge Helene White explained that the Sixth Circuit's ruling in *Clark* "addresses how much a plaintiff must show to satisfy a district court that

other employees exist who ... [are] similarly situated to the plaintiff," but "does not address the underlying threshold for FLSA similarity, which remains the same." *Clark,* 68 F.4th at 1020–21 (White, J., concurring in part and dissenting in part).

Thus, it is still the law in this Circuit that Plaintiffs "need only present sufficient evidence that the practices to which Defendants allegedly subjected them were widespread practices that impacted the putative class members." *Hogan v. Cleveland Ave Rest., Inc.,* 690 F. Supp. 3d 759, 776 (S.D. Ohio 2023).

While there is vigorous dispute over the application of the rounding policy to the proposed entire collective, the Court finds Plaintiffs have shown the rounding practice applied broadly to all the non-exempt employees. Primarily, they provide the applicable pay policies and the Timekeeping Policy (ECF # 55-11), which names the target group as "Cleveland Clinic United States locations-All Non-Exempt Employees, Non-physician employees." It then defines "Cleveland Clinic United States locations" as

> the main campus, Avon, Euclid, Fairview, Hillcrest, Lutheran, Marymount, Medina, Mercy, South Pointe, Children's Hospital for Rehabilitation, Weston Hospital, Coral Springs Ambulatory Surgery Center, Martin North Hospital, Martin South Hospital, Tradition Hospital, and all Family Health Centers, Physician practice sites, Nevada practice sites, Emergency Departments, Express Care Centers, Urgent Care Centers and Ambulatory Surgical Centers reporting to these facilities.

*Id*.

The United States Supreme Court has expressly determined that representative evidence in collective actions is permissible. "A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a

proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Tyson Foods, Inc. v. Bouaphakeo, 577* U.S. 442, 454–55, 136 S. Ct. 1036, 1046, 194 L. Ed. 2d 124 (2016). In many cases, a representative sample is "the only practicable means to collect and present relevant data" establishing a defendant's liability.

Plaintiffs further provide expert testimony that Defendant's rounding practices worked against the employees nearly 80 percent of the time. Naturally and quite reasonably, Defendant argues that the scope of the proposed class and the variety of positions involved necessarily present individualized questions and issues; but the United States Supreme Court has held expressly that representative evidence is in some circumstances, sufficient to show class wide FLSA violations. See *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 455, 136 S. Ct. 1036, 1046, 194 L. Ed. 2d 124 (2016). ("In many cases, a representative sample is the only practicable means to collect and present relevant data establishing a defendant's liability."). (Internal citation omitted). Moreover, it has expressly held and reiterated repeatedly that employees subject to the same FLSA violating policy are similarly situated. "But in this case, the plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 585 (6th Cir. 2009), abrogated by *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). "The district court implicitly and improperly applied a Rule 23–type analysis when it reasoned that the plaintiffs were not similarly situated because individualized questions predominated. This is a more stringent standard than is statutorily required. Granted, it is clear that plaintiffs are

similarly situated when they suffer from a single, FLSA—violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien* at 584-85. *Bouaphakeo,* 577 U.S. at 455.

"Furthermore, it is possible that representative testimony from a subset of plaintiffs could be used to facilitate the presentation of proof of FLSA violations, when such proof would ordinarily be individualized." *O'Brien,,* 575 F.3d at 585. The Sixth Circuit in *O'Brien* cited to *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1263–65, 1279–80 (11th Cir.2008) which it read as determining that "although proof of exemption from FLSA's overtime-pay requirements might appear to be individualized, certain plaintiffs' representative testimony could be used to show exemption's inapplicability, as all plaintiffs in collective action were similarly situated"). *O'Brien,,* 575 F.3d at 585.

Defendant also argues that Dr. Kriegler's analysis demonstrates that roughly 18 percent of the putative collective suffered no injury and therefore, should not be part of the collective. Although Plaintiffs dispute this argument they concede " First, employees with no time detriment fall entirely outside the proposed collective, which is strictly limited to those who "were not paid for all minutes or hours recorded due to rounding." (ECF # 71 pg 12). Moreover, the parties agree that rounding in and of itself does not violate the FLSA. It only violates the FLSA when "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked ." 29 CFR § 785.48. Because Plaintiff's own evidence demonstrates these 17.12 percent of employees suffered no injury, the Court finds they are not similarly situated to the majority whom, at this stage of the proceedings, did appear to suffer an injury from an FLSA violating pay policy. "To satisfy Article III's

standing requirements, a plaintiff must show: '(1) [she] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo v. Robbins*, 136 S.Ct. 1540, 1548 (2016); *Soehnlen*, 844 F.3d at 581-82; see also *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury"). Therefore, the Court finds the 17.12 percent employees that had a net neutral or net positive pay rounding are not part of the collective action.

Defendant contends that not all employees were subject to the same rounding policy as some were subject to a flex or quarter hour rounding policy. According to Defendant, around 4.5 percent of its non exempt employees worked in flex rounding or quarter rounding policy. Consequently, they are not similarly situated to those employees subject to Defendants' general rounding policy. Plaintiffs contend this is a bit of a red herring as Defendant's own evidence shows all the putative collective members were subject to flex rounding everytime they clocked out for a meal. Thus, it actually demonstrates all employees are similarly situated because it was not isolated to some select employees or departments. Instead, it was a system-wide policy automatically accounted for in Defendant's timekeeping software. Moreover, Dr. Kriegler's analysis accounted for both flex and quarter hour rounding and both show underpayment on a

collective scale.

Defendant contends that many employees were subject to a different type of timekeeping called "flex" rounding. In flex rounding, rather than rounding individual punch times, Defendant would calculate the total elapsed time between an employee's clock-in and clock-out times, after deducting a meal period, unless an employee reported they did not receive a meal time, then rounded the resulting duration of time to the nearest quarter hour. However, employees subject to quarter-hour rounding could be converted to flex rounding on a shift-by-shift basis when punching out for a meal period. Moreover, they only had to punch out for a meal if they left their work facility for that meal or when working on a job that was subject to flex rounding.

Because the employees were subject to these two different types of rounding systems Defendant argues they cannot be similarly situated for notice purposes. However, Plaintiffs counter this by noting that both systems are subject to rounding against employees as evidenced by Dr. Kriegler's analysis and Defendant's own representations which show that employees subject to quarter hour rounding were also subject to flex rounding. At this stage of the proceedings Plaintiffs have shown that regardless of the practice used, Defendant still rounded against the employees; and thus, they are subject to the same FLSA-violative policy. Importantly, Plaintiffs have shown at this stage of the proceedings that there was a consistent, systemwide policy of rounding and that rounding heavily favored Defendant. Thus, the Court finds Defendant's argument does not overcome Plaintiffs' evidence that even those subject to flex or quarter hour rounding are similarly situated to Plaintiffs for the purpose of receiving notice.

The Court finds Plaintiffs have met their burden to show the proposed collective is similarly situated because they were all subject to the same rounding policy. Defendant's own time keeping policy statement reads that it applies to "all non-exempt employees, non-physician employees." It contains the board approval dates for the various U.S.-based facilities. All the Plaintiffs testified the rounding applied to each of them at their various workplaces. The attendance and pay policies submitted by Plaintiffs show the policies applicable to the described "target groups" contained virtually identical language. Coupled with Defendant's Rule 30(b) witnesses testimony, the Court finds Plaintiffs have met their burden.

However, there are some exclusions. First, the Court finds per Dr. Kriegler's own expert report nearly 18 percent of employees did not suffer any unpaid overtime wages and are thus not part of the collective action. Second, per Plaintiffs' own admission those employees at Union Hospital and members of the Ohio Nursing Association covered by a CBA were not subject to FLSA-violating rounding policy and are therefore excluded.

**<u>Were the Opt-In Plaintiffs Actually Working During the Rounding Period</u>**

Defendant contends that there are genuine questions whether the Plaintiffs and the putative collective were actually working during the rounded time. In fact, such issues present highly individualized inquiries based on circumstances unique to each employee regarding such concerns as distance from a punch clock to the actual employee workstation, supervisor expectations, patient handoffs, and whether the employee works in a large or small facility. However, a review of depositions of the opt-in plaintiffs reveals the following:

Deborah Garner testified that she started work immediately after punching in for work. (ECF # 54-1, pg 46), though she did admit there were times when she would punch in then have

to walk to ER to find out where she would be assigned to work on a given day. (*Id.* at 47).

Marie Pinardo testified that she could not log in more than seven minutes before her scheduled start of a shift, nor could she log off more than seven minutes after her scheduled shift's conclusion. (ECF # 54-2 pg 24-25). She further testified she immediately began working after punching in, (*Id* at 46) and worked up until she punched out. (*Id* at 47).

Plaintiff Charlotte Allen-Shoats testified that she was allowed to punch in seven minutes prior to her shift and punch out seven minutes after the end of her shift. (ECF# 54-3 pg 48). She further attested to beginning work immediately after punching in. (*Id*. at pg. 51). And she would punch out immediately after concluding her work. (*Id.* pg 54-55). However, she testified that if she had to float to another department for that day's work she would have to walk back to her department to punch out. (*Id*. at 55, 71).

Jessica Parks asserted that her department wanted them there seven minutes early to clock in and be ready to start working immediately after clocking in. (ECF # 54-4 pg 34). And she had to clock out no more than seven minutes after her shift ended. (Id at 59). She also testified she began work immediately after clocking in. (*Id.*). She also testified that she punched out immediately after finishing her work. (*Id*. at 61).

Baldeep Gill testified he would arrive early for his shift, begin working and then punch in seven minutes before he was scheduled to work. (ECF# 54-5 pg. 34). He testified that he always started work immediately after punching in, (*Id*. at pg 49) and immediately punched out after finishing his work. (*Id* at 51).

Lastly, opt-in Plaintiff Annette Burvick testified in her deposition that, unlike the other opt-ins, she did not punch in and out of a time clock, but logged in and out of work on her

computer. (ECF # 54-6 pg. 48). She recounted she was told about the seven minute before work start and seven minutes after the close of work rounding policy at orientation. (*Id*. at pg. 58). She testified that she started working immediately after clocking in. (*Id* pg. 84).

In short, the opt-in Plaintiffs all testified that they began work immediately after punching in and worked up until they punched out. Therefore, the Court finds Plaintiffs have met their burden of proof to show they were similarly situated in that they were not paid for all hours worked over 40 hours in a given week. However, even if they had not met that burden, courts have held and this Court agrees such an argument goes to the merits of the claim, which is still not appropriate for the Court to consider at the notice stage, even after *Clark*. See *Lott v. Recker Consulting, LLC,* No. 1:23-CV-489, 2024 WL 4694099, at *8 (S.D. Ohio Nov. 6, 2024). ("Start with Defendants' contention that Plaintiffs impermissibly seek compensation for non-compensable time. This represents a merits argument the Court should not consider at the notice stage."). Because the Court holds that whether the class was performing compensable work is a merits issue, it reserves the question of the accuracy of Defendant's timekeeping and the inferences to be drawn from the same for a later date. But for Notice purposes, the Court finds Plaintiffs have shown they were performing compensable work during the rounded time period.

**Employees whose compensation was governed by a CBA**

Many putative collective members were subject to collective bargaining agreements. These agreements contain overtime compensation provisions that Defendant contends are unlike those of the putative collective. Consequently, Defendant contends they are not similarly situated to the rest of the collective.

Plaintiffs, in response, point to the deposition testimony of Van Horn who testified that in

spite of contractual requirements in CBAs to pay based on actual clocked time, Defendant still applied its rounding policy. See Van Horn depo ECF # 53-1 pg 135 ("Q. Okay. But employees were actually paid on the basis of rounded time. A. Yes. They were paid based on rounding."). See also *Id.* (Q. So at least for the purpose of this collective bargaining agreement, was it the Clinic's position that they had the authority to round employee time? A. Yes. We had the authority to round employee time."). Moreover, Van Horn testified that the employees governed by certain CBAs were further subject to Defendant's seven minutes before and after clock in policy. *Id.* In short, the testimony and evidence at this stage of the proceedings shows with some exceptions that Defendant rounded employee time in accordance with its U.S.-based pay policies even for those employees subject to collective bargaining agreements and those were rounded heavily in favor of Defendant per Dr. Kriegler's research.

As a result, the Court finds Notice is appropriate for the collective as defined by Plaintiffs and the Court grants the Motion for Court-Approved Notice to the collective. Lastly, Defendant contends Plaintiffs have provided no evidence Defendant engaged in a willful violation of the FLSA, thus the relevant time period should only be two years and not three. An FLSA violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' " *Simpson v. Baskin,* No. 3:17-CV-01077, 2018 WL 1070897, at *10 (M.D. Tenn. Feb. 26, 2018), report and recommendation adopted, No. 3:17-CV-01077, 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018 *Elwell v. Univ. Hosps. Home Care Servs.,* 276 F.3d 832, 842 (6th Cir. 2002). Moreover, this Court has previously held Plaintiff has sufficiently alleged a willful violation of the FLSA entitling it to a three year look back at this stage of the proceedings. Further, Defendant's intent is a merits issue to be

determined after full discovery. "Lastly, Menorah argues the relevant time period should be two years and not three as Plaintiffs have produced no evidence that Menorah's alleged FLSA-violative pay practices were willful. However, as Plaintiff points out, this is a merits determination to be resolved after discovery." *Thompson v. Menorah Park Ctr. for Senior Living Bet Moshav Zekenim Hadati,* No. 1:17CV2580, 2021 WL 388771, at *4 (N.D. Ohio Feb. 4, 2021).

This begs an additional question, however. When does the clock start running to calculate the three year look back? This question is answered by the plain language of the statute. The parties are on notice that a collective action is commenced on the date the Complaint is filed for named Plaintiffs who have filed consents or, for opt-in Plaintiffs, on the subsequent date on which a written consent is filed. See 29 U.S.C. § 256. Moreover, equitable tolling issues are best resolved after discovery because it directly effects the amount of damages recoverable for each opt-in. Consequently, the Notice shall be for a three year period running from the date the Complaint was filed.

**The Notice**

Plaintiffs submit a proposed collective Notice, email Notice and posting for the Court's consideration. Plaintiffs ask the Court that Notice be delivered by regular U.S. mail, email and that a notice be posted at all time clocks. The Court finds that email and U.S. Mail notice are sufficient to provide the necessary information to the putative collective. This will ensure that putative class members will receive notice of the suit by at least one method and will eliminate concerns regarding inaccurate residential addresses or delays in mail service. See *Green v. Verita Telecommunications Corp.,* No.1:20CV2872, 2021 WL 2227379 (N.D. Ohio June 2, 2021). This

aligns with the type of notice approved by district courts throughout this Circuit. The Court is mindful of the need to balance affording putative class members the opportunity to participate in the collective action while not badgering them to do so. Accordingly, the Court permits the Notice and Consent form to be sent via U.S. mail and e-mail to all putative class members. The Court further finds that posting the Notice by punch clocks is unnecessary as email and U.S. Mail satisfy FLSA requirements.

The Court finds that the relevant time frame should also extend only to November 30, 2024, the date the parties agree Defendant ended its rounding practices. Finally, while the Court approves Notice to the collective, given the size and scope of the putative collective, the Court grants Defendant's request for twenty-one days to confer and submit for approval a class notice that conforms to the findings in this Order. Thus, the parties shall submit the agreed upon Notice no later than October 15, 2026.

IT IS SO ORDERED.

Date: September 24, 2026

/s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge